## METROPOLITAN TRUST COMPANY v. CITY OF NORTH LITTLE ROCK ET AL

5-5935                                                     482 S.W. 2d 613

Opinion delivered July 17, 1972

*H. B. Stubblefield* and *Smith, Williams, Friday, El-dredge & Clark,* by: *George Pike Jr.,* for appellant.

*John T. Harmon,* City Attorney, for appellees.

FRANK HOLT, Justice. The appellant owns a 22-acre tract of land which it sought to rezone from a single family residential (R-1) to a commercial zoning classification (C-3). This would permit the construction of a proposed community shopping center. The North Little Rock Planning Commission and its Planning Director recommended this reclassification. The North Little Rock City Council, appellee, rejected these recommendations and refused to adopt the proposed reclasification ordinance. The Chancellor agreed with the appellees, the City of North Little Rock and eight intervenors, and refused to enjoin the City Council from interfering with appellant's proposed use of the property. From that decree comes this appeal.

For reversal the appellant contends that the preponderance of the evidence establishes that the refusal of the City Council to rezone the 22-acre tract in accordance with the recommendations of the City's Planning Commission and Director was an arbitrary attempt to restrict the growth of an established business district and, further, it was an arbitrary denial of appellant's right to use its property for its highest and best use which would not adversely affect the value and use of any adjacent property. We agree with appellant.

We first describe the location of the property. It is situated at the intersection of two main traffic arteries: one is the Jacksonville Expressway (Highway 67-167) and the other is McCain Boulevard. This intersection is nearby and north of Interstate 40 in North Little Rock. The Jacksonville Expressway is the primary north-south traffic artery going north from Interstate 40. This 4-lane highway, by appellant's property, has a speed limit of 75 miles-per-hour and a daily traffic count of 21,000 vehicles. The project-

ed daily traffic count in 1990 is 69,000 vehicles. McCain Boulevard is the primary east-west traffic artery in Pulaski County north of Interstate 40. This heavily traveled artery goes by the appellant's property at the diamond shaped intersection and has a daily traffic count of 4,000 vehicles with a projected count of 17,000 to 20,000 vehicles per day in 1990.

The subject property, the southwest quadrant of this intersection, is the only quadrant presently zoned residential. The other three quadrants are zoned commercial. The northwest quadrant, which is directly across McCain Boulevard from appellant's property, is the present construction site of the largest regional shopping center in the state. This mall contains more than 50 acres and is designed to serve a trading area of approximately 75 miles. The commercially zoned quadrant abuts a multi-family residential area. The commercially zoned northeast quadrant abuts a light industrial area separated only by the city limit boundary. The southeast quadrant, zoned for commercial use, abuts farm land outside the city limits. The subject property was incorporated into the city a few years ago and became classified as residential (R-1). Before the incorporation, its use was unrestricted. From May, 1967, until the end of 1968, the property was the site of a commercial sales business. It has never been used for residential purposes and is now vacant. There was evidence that a substantial population growth is projected in the surrounding area and that a feasibility survey reflects that market needs would justify the construction of this proposed community center as a supplemental commercial service facility to the regional shopping center located on the northwest quadrant.

It appears undisputed that the location of appellant's property at the intersection of these two main traffic arteries and the existence of the commercial zoning of the other three quadrants render this property unsuitable for single family residential purposes as now zoned. In fact, one of appellees' two expert witnesses testified that the property is "neither economically feasible nor environmentally desirable for low density residential development." Appellees' other expert witness agreed that the best use of appellant's property would be commercial and, further,

the "highest use, the most profitable," would be a shopping center.

Appellant's witnesses testified that no other area in this locality between North Little Rock and Jacksonville is as well situated from the standpoint of size and access to serving the shopping needs of the many thousands of persons who now and will eventually reside in this area.

The appellees, however, contend that there would be an adverse effect on adjacent property. The 22-acre tract abuts the rear of a residential area of which only seven lots join the subject property. Of the seven owners, only two appeared as witnesses. One was in favor of the proposed rezoning and the other protested. This appellee-protestant acquired his property in 1969. He admitted that he did not know whether the reclassification would affect the market value of his property. It was his personal preference that rezoning not be permitted because it would be less desirable to live on his property adjacent to the proposed shopping center. He was concerned about his property being properly shielded from the lighting which attends a shopping center. Other concerns voiced by this protestant were his objections to increased traffic and the normal nuisances that would result from any commercial enterprise as this proposed shopping center. One side of his property, also, borders upon a 40-acre school complex which existed when he bought the property. This educational facility accommodates 1,200 students. The grounds are lighted by four floodlights in the parking area. The school facility is in full view from his yard and a 4' fence does not obstruct his view. He was aware that the three quadrants across from him were zoned commercial at the time he purchased his property. Only one of the eight other intervenors appeared and protested the proposed rezoning. He owned a residence in the vicinity and was of the opinion that the reclassification would devalue his property. He was unaware that a neighbor across the street had listed his property for sale at a $11,000 profit. In fact, one of appellees' own expert witnesses agreed there would be no significant adverse effect on any other residential property beyond the seven abutting lots. The owners of the commercially zoned three quadrants did not

appear and object to the rezoning. The North Little Rock School District which owns approximately 60% of the adjacent property to the rear of the 22-acre tract voted through its School Board not to oppose the rezoning application. This acquiescence was based upon appellant's agreement to three conditions which appellant has agreed to fulfill.

Two aldermen testified for appellees. One alderman agreed the property was usable for the proposed shopping center and that he was familiar with the proposed development plan. However, he felt there was enough commercial property in this area to serve its inhabitants and he questioned whether this was the best use for the property. A different classification for business use would be better. He visualized complaints from residents about traffic conditions and garbage disposal problems which ordinarily attend supermarkets. The other alderman was, also, of the view that it would create traffic problems; that the shopping center wasn't needed and the area should remain residential. Neither of these aldermen, however, expressed views that the adjacent property would be adversely affected.

Appellees presented two witnesses as experts in city planning. One witness with eight years experience in city planning and engineering was of the view that some adverse effect would exist based upon lights, noise from loading and unloading, and debris. He agreed that the lighting problem would be "minimal" and that he had made a study of the proposed plan. The noise factor was narrowed to the servicing of a Safeway Store on the property. He, also, admitted that the debris problem was minimized by the requirements of a city ordinance and terms of the lease which require the debris to be kept in closed containers inside the building. He agreed that the appropriate zoning classification should be for business purposes. The other expert witness in city planning was of the view that adjacent property owners would be adversely affected without adequate buffering; also, there was a lack of "needs of the market place" and compatibility of the proposed community shopping center in association with the "higher" regional shopping center across the thoroughfare. He admitted, however, that a community shopping center could be de-

signed and placed adjacent to a residential area without adverse effect; that a discount store operation was desirable in a community or regional shopping center; and that the use of appellant's property would be "better suited for a more intensive type of development." He testified, as abstracted:

> "In summary, there is going to be a need for additional community type shopping centers in this area under study, and the community shopping centers should be located to the confluence of your major arteries."

Appellant presented as a witness the architect who designed the proposed shopping center. He has had many years experience in developing shopping centers and city planning. Appellee's witnesses agree that he is highly respected and most capable of designing acceptable and desirable shopping centers so as to avoid any possibility of adverse effect to adjoining property owners. This architect designed the shopping center so that it provides for the equivalent of 1/2 to 2 lots or a distance of 75' to 95' as an open buffer between the rear property line of the seven adjoining lot owners and the rear of the proposed buildings to be constructed on the shopping center. The shopping center is designed so that it faces away from the rear of the adjacent property. Along the boundary line between the owners, the buffer strip will consist of an 8' high fence; an additional 30' natural green belted strip, which is presently wooded; also, the appellant would plant additional landscape. There would be a drop in the elevation of approximately 6'. With the 8' fence and 6' drop in elevation, the view from the residential area would be buffered by a height of approximately 14'. The height of the proposed one story buildings is 18'. It is approximately 200' from the rear property lines of the seven adjacent lots to the front of the community shopping center stores. The city ordinance requires only a set-back minimum of 20'. The designer was of the view that it would be impossible for a person standing on the adjacent residential property to see the buildings of the proposed center. The only provision for any traffic to the rear of the buildings is a narrow passageway which would be used only for loading and unloading purposes.

The appellant presented other expert witnesses in support of its contention that the highest and best use of its property was for the proposed purpose and that it would not adversely affect any adjoining propeety owners.

Appellant's evidence in summary is that the North Little Rock Planning Commission approved the request for rezoning; its Planning Director approved it and testified to that effect; two admittedly qualified real estate appraisers, two architects and city planners justified the rezoning; the manager of the North Little Rock Chamber of Commerce, who is a member and past president of the North Little Rock School Board, approved and supported the requested rezoning; the owner of one of the seven adjacent residential lots favored the rezoning; the owners of the three quadrants at the intersection did not appear and interpose objections; the North Little Rock School District, which is the owner of 60% of the abutting property to the rear and five of the seven adjacent residential owners did not appear in opposition to the rezoning. In fact, only one of the adjacent residential lot owners appeared in opposition to the reclassification.

In *Olsen v. City of Little Rock,* 241 Ark. 155, 406 S.W. 2d 706 (1966), we held that in rezoning cases "***the chancellor should sustain the city's action unless he finds it to be arbitrary. No matter which way the chancellor decides the question, we reverse his decree only if we find it to be against the preponderance of the evidence." Here, as there, we are of the view that the chancellor's decree is against the preponderance of the evidence.

We established the rule many years ago in *Little Rock v. Pfeifer,* 169 Ark. 1027, 277 S.W. 883 (1925), that "***any attempt on the part of the city council to restrict the growth of an established business district is arbitrary. When a business district has been rightly established, the rights of owners of property adjacent thereto cannot be restricted, so as to prevent them from using it as business property." *City of West Helena v. Rapheal G. Davidson et ux,* 250 Ark. 257, 464 S.W. 2d 581 (1971), is to the same effect.

In the case at bar, we need not reiterate the evidence which we have detailed to the effect that appellant's property is in the midst of an established commercial district and borders upon two intersecting 4-lane thoroughfares with a heavy traffic count. Further, this diamond shaped intersection was designed and constructed to accommodate heavy traffic. Also, it appears undisputed that the present classification for residential purposes is not suitable for this 22-acre tract. Neither does it appear from a preponderance of the evidence that the proposed rezoning would be detrimental to adjacent property owners.

Neither do we find any merit in appellees' argument that the legislative action of the City Council was taken without any site development plan being presented to the Council. It is admitted that the City Council had before it for its consideration an ordinance to rezone the 22-acre tract from the single family residential to the proposed neighborhood shopping center classification (C-3). This in pertinent part provides:

> "Primarily a planned shopping center, for the conduct of retail trade with emphasis on servicing a large segment of the community in surrounding residential areas."

It appears that the aldermen were conversant with the proposed usage as was recommended by the City Planning Commission. There is undisputed evidence that the proposed development plan was shown to the city aldermen and discussed with them before the City Council meeting at which time they voted upon the reclassification.

The appellant-owner was willing to execute a Bill of Assurance which would provide there would be no violation of any provision of the proposed development plan. Further, as requested by the North Little Rock School Board, there would be no eating establishments, such as drive-ins; no outlets selling alcoholic beverages; and a suitable fence or wall would be constructed on the line between the school property and the 22-acre tract. We have expressly approved a plan of development with a proffered Bill of Assurance.

*City of Little Rock* v. *Hocott,* 220 Ark. 421, 247 S.W. 2d 1012 (1952). There we said:

> "However, this does not mean that appellees may proceed with a construction project that is not in substantial conformance with the plan and bill of assurance which the City Planning Commission approved."

Likewise, in the case at bar, we hold that appellant should be required to comply with its proposed restrictive use of the property.

Since we are of the view that the chancellor's finding that the city was not arbitrary in its action is against the preponderance of the evidence, the decree is reversed and the cause remanded with directions to render a decree in accordance with this opinion, after appellant has filed a Bill of Assurance which guarantees the performance of all conditions agreed to by it to assure that there be no violation of the proposed development plan and no violation of the conditions stipulated with the school district.

Reversed and remanded.