Joe BALDRIDGE et ux *v.*
CITY of NORTH LITTLE ROCK et al

75-41                                                    523 S.W. 2d 912

Opinion delivered June 9, 1975

*Bob Dawson*, for appellants.

*Stuart W. Hankins*, for appellees.

J. FRED JONES, Justice. The appellants, Joe Baldridge and his wife, own two lots with a residential building thereon at the corner of Cypress and D Streets on Park Hill in North Little Rock. Cypress Street is one block west of John F. Kennedy Boulevard, which is a divided four-lane thoroughfare, hereafter referred to as JFK. D Street crosses JFK and is one of the two streets carrying traffic from Park Hill west down Park Hill to Levy. The property for one-half block or 150 feet on each side of JFK is zoned C-3 or heavy commercial. All property west of Cypress, and that portion east of Cypress for a distance of one-half block or 150 feet, is zoned R-2 or residential.

Mr. and Mrs. Baldridge petitioned the North Little Rock Planning Commission to have their property rezoned from R-2 to C-1 or light commercial. The petition was denied by the planning commission and also by the city council. The chancery court, on appeal, held that the action of the city council in denying the petition was not arbitrary and capricious and the petition was also denied by the chancellor. On appeal to this court Mr. and Mrs. Baldridge designate the points on which they rely for reversal as follows:

"Arkansas case law supports the contention of the appellants.

The trial court's finding that the planning commission's and board of adjustment's refusal to rezone was not arbitrary is against the preponderance of the evidence.

Rezoning of appellants' property from R-2 to C-1 constitutes the highest and best use of the property."

The Baldridges produced witnesses who testified that the highest and best use of their property would be for light commercial and as a buffer between the business property fronting on JFK and the residential property west of Cypress Street. The respondent-appellees produced witnesses who testified that the present zoning classification of the area involved was the result of long and deliberate study; that the streets west of JFK are not located or designed to accommodate a business area and that the area is entirely residential, which is its highest and best use. As in the usual situation in zoning cases, some neighboring property owners objected to the re-classification, while others said they had no objection.

All three of the appellants' points really depend on their argument that the "Pfeifer Rule" announced in *Little Rock* v. *Pfeifer*, 169 Ark. 1027, 277 S.W. 883 (1935), requires a reversal of the chancellor's decree as a matter of law. The appellants point out that in *Pfeifer* we said: "any attempt on the part of the city council to restrict the growth of an established business district is arbitrary. When a business district has been rightly established, the right of owners of

property adjacent thereto cannot be restricted, so as to prevent them from using it as business property." The appellants apparently interpret this quote as a rule of law to be rigidly and literally applied to all residential property in all residential zones where the residential property involved abuts upon or is adjacent to, property in a business district or zone which has been rightly established. The appellants have quoted correctly from our opinion in *Pfeifer*, but the above quoted language is not the unwieldy, rigid rule of law to be applied in all cases as the appellants appear to argue.

The primary question involved in *Pfeifer* was whether the property involved was actually a part of a residential district or had become a part of an expanding business district laid out by an ordinance passed under authority of Act No. 6 of the Third Extra Session of the 44th General Assembly in 1924. This Act only contained five short paragraphs reading as follows:

"Section 1. It is recognized and hereby declared that the beauty of surroundings constitutes a valuable property right which should be protected by law, and that this is particularly true of residential sections where people have established their homes.

Section 2. Cities of the first class are hereby authorized to establish zones limiting the character of buildings that may be erected therein, and that such zones may be of three classes; first, portions of the city where manufacturing establishments may be erected or conducted; second, portions of the city where business other than manufacturing may be carried on; third, portions of the city set apart for residences.

Section 3. When the city council shall have laid off such zones it shall not be lawful for anyone to construct or carry on within a given zone any business not authorized by the ordinance of such city establishing the same, unless with special permission granted by the council of said city, or by a commission which it may create for the purpose of determining whether an exception shall be made in the particular instance; and such exceptions

shall be made only for good cause, and in case of abuse the adjacent property owners shall have the right to appeal to the courts of chancery to protect their property from depreciation by reason of the setting up of such exceptional business within the zone.

Section 4. The city council of such city shall have power to pass ordinances limiting the height of buildings in the zones created by it, so that the beauty of monumental buildings may not be impaired by the contrast.

Section 5. This act being necessary for the immediate preservation of the public peace, health and safety, an emergency is hereby declared to exist, and this act shall take effect and be in force from and after its passage."

The language we used in *Pfeifer* applied to the facts of that case under the statutory law then applicable. In the continued application of the "Pfeifer Rule" the evidentiary facts in *Pfeifer* should not be overlooked or ignored. The so-called "Pfeifer Rule" as above set out did not spring full grown as a separate and distinct rule of law in the *Pfeifer* decision. It drew its substance from the facts in that case and should only be applied as a rule of law in, and to, similar factual situations. For the context in which the "Pfeifer Rule" came into being, we quote a more complete statement from *Pfeifer* as follows:

"Giving due effect to the statements and opinions of all the witnesses, we are of the opinion that the evidence establishes very clearly and beyond controversy that the locality in question is a business district which has been well established, and which is now expanding, the expansion having reached the point where appellees are constructing their building. There is substantial evidence tending to show that the value of some of the adjacent residence property will be depreciated on account of the lessening of usable value of the property for residence purposes, but we do not think that this affords justification for interfering with the gradual expansion of the business district, which has already been established. As the size of the business district grows, it ceases to be a residence district to that extent within the

purview of the zoning ordinance, and any attempt on the part of the city council to restrict the growth of an established business district is arbitrary. When a business district has been rightly established, the rights of owners of property adjacent thereto cannot be restricted, so as to prevent them from using it as business property."

In reaching the conclusion that the property involved in *Pfeifer* was in an established expanding business district, we pointed out very pertinent evidence as follows:

"The building to be constructed . . . is situated near the center of the block, fronting north on Prospect Avenue, between Palm and Beech Streets. There is an alley running north and south through the center of the block, and this building adjoins the alley on the west side. There is a residence west of the building on the northwest corner of the block, and the wall of the building is within about eight or ten feet of the residence. The rear end of this building will come within about fifteen feet of a residence fronting on Palm Street. Across the alley from the building of appellees there is a residence building, and a brick store building is on the corner of Prospect and Beech Streets. The whole of the block on the east, fronting north on Prospect, is built up with two-story business buildings, and on the north side of Prospect the corresponding block is thus built up, and also the east half of the block on the north side of Prospect, in front of the block where appellees' building is situated, is covered with business structures. The other half of the block is occupied by two residences."

Aside from the changes in the law since 1925, we had a quite different factual situation in *Pfeifer* than we have in the case at bar. In *Pfeifer* the property was similarly situated to what would have been the situation concerning the appellants' property in the case at bar, if the appellants' property had fronted on JFK. In *Pfeifer* a proposed business building, to front on Prospect Avenue, was involved and there were only two other residential buildings in the same block fronting on Prospect. One of the residences was on the corner west of the property involved and the other residence was east

of it across the alley running north and south through the center of the block. A business building had already been built on the northeast corner of the block and the next block east was solid business property.

In the case at bar all of the property fronting east on JFK is zoned for business and all the property on the west side of the blocks and fronting on Cypress is zoned residential. It is recognized by all parties concerned that if the appellants' petition had been granted, their property would have constituted the first and only property zoned for business west of the half blocks fronting on JFK. There was evidence that two blocks north of the appellants' property a parking lot for a business fronting on JFK extended back to Cypress Street, but this property was not zoned for a parking lot or other business. We are, therefore, of the opinion that residentially zoned property which happens to be adjacent to business zoned property is not automatically entitled to rezoning as business property as a matter of law under *Pfeifer*. To hold otherwise would be illogical and could easily defeat the entire purpose of municipal zoning, in that a string of business establishments could be driven through any residential neighborhood by the simple process of touching each other. Such is not the intent of the zoning laws and such is not the intent of the so-called "Pfeifer Rule."

Since our decision in *Pfeifer* we have attempted to point out in other cases that the "Pfeifer Rule" does not apply with equal force and rigidity to each and every case regardless of the location of the property or the direction of business expansion. In the case of *City of Little Rock* v. *Parker*, 241 Ark. 381, 407 S.W. 2d 921 (1966), the petitioner sought a rezoning of property from an A-1 family residential classification to an F-commercial classification. The city council denied the petition and the chancellor found the council's action arbitrary under the "Pfeifer Rule." In reversing the chancellor's decree this court referred to the drastic changes in the purpose and wording of zoning laws since *Pfeifer*, specifically referring to Act 186 of the Acts of the General Assembly of 1957, Ark. Stat. Ann. § 19-2825 (Supp. 1965), and in so doing we said:

"It is apparent that the passage of Act 186 of 1957, to

some degree, necessarily modified our holding in *Pfeifer*, for a strict and literal interpretation of all the language in that case would certainly result in nullifying the effort by a city to coordinate development of lands, and, more than that, in effect, would nullify Act 186. The right and responsibility for classifying the various areas in the city are with the zoning authorities, and their decision will only be distrubed if it is shown that they acted arbitrarily. *Lindsey* v. *City of Camden*, 239 Ark. 736, 393 S.W. 2d 864."

The so-called "Pfeifer Rule" was applied in the case of *City of West Helena* v. *Davidson*, 250 Ark. 257, 464 S.W. 2d 581 (1971), but in that case the facts were similar to those in *Pfeifer*. In the *Davidson* case, referring to the language in *Pfeifer*, we said:

"We think this language is applicable to the case at bar in view of the fact that appellees' property is practically surrounded by established commercial activities which border on both sides of a major highway having a traffic count of approximately 15,000 vehicles per day."

In *Metropolitan Trust Co.* v. *NLR*, 252 Ark. 1140, 482 S.W. 2d 613 (1972), both the city council and the chancery court refused to rezone family residential property (R-1) to a commercial zoning classification (C-3), and in reversing the chancellor's decree, we again applied the "Pfeifer Rule," but in doing so we said:

"The subject property, the southwest quadrant of this intersection, is the only quadrant zoned residential. The other three quadrants are zoned commercial. The northwest quadrant, which is directly across McCain Boulevard from appellant's property, is the present construction site of the largest regional shopping center in the state. This mall contains more than 50 acres and is designed to serve a trading area of approximately 75 miles. The commercially zoned quadrant abuts a multi-family residential area. The commercially zoned northeast quadrant abuts a light industrial area separated only by the city limit boundary. The

southeast quadrant, zoned for commercial use, abuts farm land outside the city limits. The subject property was incorporated into the city a few years ago and became classified as residential (R-1). Before the incorporation, its use was unrestricted. From May, 1967, until the end of 1968, the property was the site of a commercial sales business. It has never been used for residential purposes and is now vacant. . . .

\* \* \*

In the case at bar, we need not reiterate the evidence which we have detailed to the effect that appellant's property is in the midst of an established commercial district and borders upon two intersecting 4-lane thoroughfares with a heavy traffic count. Further, this diamond shaped intersection was designed and constructed to accommodate heavy traffic. Also, it appears undisputed that the present classification for residential purposes is not suitable for this 22-acre tract. Neither does it appear from a preponderance of the evidence that the proposed rezoning would be detrimental to adjacent property owners."

The appellants rely upon *Davidson* and *Metropolitan Trust Co., supra,* in support of their argument that the "Pfeifer Rule" should be rigidly applied to the case at bar. We conclude that the "Pfeifer Rule" like many other rules of law, especially in equity cases, should be applied only in conjunction with a thorough examination of the facts in the particular case. In *Davidson* and *Metropolitan Trust Co.* the involved property was referred to as "almost surrounded" in one case and "in the midst of an established commercial district" in the other case. In the case at bar the appellants' property is adjacent to an established business district with a high lattice metal fence separating it from the business property, and the appellants' requested rezoning is the first attempt to invade for business purposes the residential zone area west of JFK.

As to appellants' second point, the meaning of the word "arbitrary" in connection with zoning was recently defined in

the case of *W. C. McMinn Co.* v. *City of Little Rock,* 257 Ark. 442, 516 S.W. 2d 584 (1974), wherein we said:

> "This Court, while recognizing that the word 'arbitrary' has several definitions, has recognized the following as the most generally accepted usage: 'Arising from unrestrained exercise of the will, caprice, or personal preference; based on random or convenient selection of choice, rather than on reason or nature.' *City of Little Rock* v. *Parker,* 241 Ark. 381, 407 S.W. 2d 921. Then we have held that 'arbitrary' also means decisive but unreasoned action and that 'capricious' means not guided by steady judgment or purpose. *City of Little Rock* v. *Habrle,* 239 Ark. 1007, 395 S.W. 2d 751."

In the case of *Olsen* v. *City of Little Rock,* 241 Ark. 155, 406 S.W. 2d 706 (1966), we said:

> "In a case of this kind the chancellor should sustain the city's action unless he finds it to be arbitrary. No matter which way the chancellor decides the question, we reverse his decree only if we find it to be against the preponderance of the evidence. *City of Little Rock* v. *Garner,* 235 Ark. 362, 360 S.W. 2d 116 (1962)."

We are unable to say that the chancellor's decree in the case at bar was against the preponderance of the evidence.

The decree is affirmed.

BROWN and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. The record shows that JFK Boulevard runs generally north and south. The first street west of JFK is Cypress. The appellants' property is located at the corner of "D" and Cypress, adjacent to a service station and Church's Fried Chicken. The next street to the north of "D" is "F" Street. Wash-Hale's real estate business is located in a commercial building on the southwest corner of "F" Street and JFK. The land immediately west that borders on Cypress and "F" Street is a paved parking lot containing 43 parking spaces.

Charles Carpenter testified that Wash-Hale's parking space was permitted because the zoning ordinance did not apply to parking lots. Reed McConnell testified that the zoning requested by appellant would increase the value of the residences in the area. The appellants offered to execute and place of record a bill of assurance limiting the use of their property to specific quiet businesses.

Since the proof shows that commercial businesses are maintaining parking lots in the same block, the traffic on the parking lot is greater than appellant's use would generate, and the zoning would increase the value of the surrounding residential properties, then the legal issue should be: "What right does the City have to restrict this property to a residential use?"

This is not a case where the property owner seeks to extend a business district but one where the owner merely asks that his property adjacent to the heavy commercial use be used as a buffer type business zone.

The validity of zoning laws is ordinarily upheld under the police power on the theory that they protect property values, prevent fire hazards, and/or promote esthetics consideration. Since the proof is that the use here would generate less traffic than the Wash-Hale parking lot—a permitted use, would improve the value of the surrounding residential property and would not change the structure and thus not interfere with esthetic considerations, I can only conclude that the City is being arbitrary and capricious in continuing to restrict this property, adjacent to a service station and a fried chicken outlet, to a residential use.

For the reasons herein stated I respectfully dissent.

BROWN, J., joins in this dissent.