## CITY OF LITTLE ROCK *v.*
## Gerald L. BREEDING and John
## Michael HENDERSON

CA 80-178                                606 S.W. 2d 120

Court of Appeals of Arkansas
Opinion delivered October 15, 1980
Rehearing denied November 5, 1980

R. *Jack Magruder, III*, City Atty., by: *Carolyn B. Wither-spoon*, Asst. City Atty., for appellant.

*Wright, Lindsey & Jennings*, for appellees.

GEORGE HOWARD, JR., Judge. This is an appeal from a decree in an action brought by appellees to rezone 1.8 acres of land from a single family district (A-residential) to a commercial district (F-commercial) for the purpose of constructing a convenience store — where the chancellor found:

1. The property is located in an established and expanding business district;

2. The Board of Directors acted in an arbitrary, capricious and unreasonable manner in rejecting appellees' application.

And, consequently, the court concluded:

"THEREFORE, the said property is hereby rezoned to "F"."

The thrust of appellant's argument for reversal may be stated by citing appellant's points relied upon in articulating the purported errors made by the chancellor:

1. The trial court erred in finding that the appellees' property was located in an established and expanding business district.

2. The trial court's finding that the decision of the Little Rock Board of Directors in denying appellees' request for rezoning was arbitrary, capricious and unreasonable is contrary to the preponderance of the evidence.

3. The trial court erred in rezoning the property directly by decree.

The essential facts for an understanding of this controversy, as well as for a resolution of the issues tendered, are:

Appellees' parcel of land is located at the southeast corner of Green Mountain Drive and Rainwood Road in Little Rock. The property is part of and, as a matter of fact, is surrounded by approximately 65 acres of land either used or zoned for commercial purposes.

Propertly immediately north of the subject property is a vacant tract of land, consisting of six acres, with street improvements and zoned "S" commercial.

To the east, extending several hundred feet to Interstate Highway 430, is Charles Valley Commercial Subdivision, which is mixed "F" commercial and "G" commercial zoning.

To the west and southwest of the subject property are the Green Forest and Williamsburg apartment complexes; and the Fox Run apartment complex is located on the northwest quadrant of the intersection of Rainwood Road and Green Mountain Drive. It is undisputed that these apartment complexes are buffers to any development to the west and southwest of the subject property. This conclusion was acquiesced in by both appellees' expert witness, Don R. Venhaus, a Planning and Land Use Consultant, and appellant's expert witness, Nathaniel Griffin, Planning Director for the City of Little Rock. There are 716 apartment units in these three apartment complexes.

To the south and southeast of appellees' property are a mini-warehouse complex which has been classified as "I" light industrial use and a commercial daycare center.

On January 29, 1979, appellees filed their application for rezoning of the subject property to commercial. On February 27, 1979, the Planning Commission recommended to the City Board of Directors that appellees' request be denied. While the Commission's report recommended that the application

be denied, the report found: (a) "No issue exists" relative to street right-of-way and traffic considerations, (b) no expressions regarding standards of quality, (c) no effect on public finances, (d) no adverse impact expected on utilities, (e) no adverse impact on public services, (f) no opposition from the neighborhood, (g) no effect on environs, and (h) as far as legal considerations and reasonableness, the report concluded:

> "The property abuts vacant nonclassified land to the east, vacant "G-1" commercially zoned land to the north, a light industrial but unclassified use to the south"

On May 1, 1979, the Board of Directors denied appellees' application, and appellees filed their action on May 31, 1979.

Appellant filed its answer on June 19, 1979, asserting, among other things, the following as the basis for resisting appellees' lawsuit:

> "6. Defendant states that the Little Rock Board of Directors acted in the best interest of the City of Little Rock and that such action taken by the Board of Directors with respect to the Complaint herein was done consistent with and pursuant to such interests. Defendant also states that the denial of the rezoning was directly related to the health, safety, and welfare of the City of Little Rock."[1]

The 65 acre tract is bounded on the north by Rodney Parham Road and, partially on the east by Interstate Highway 430.

Mr. Venhaus in explaining his familiarity with the area during his tenure as Director of Planning for Little Rock testified:

> "A. . . . [I]n the early seventies the city didn't have zoning

---

[1]It is plain that appellant-defendant's answer merely pled conclusions rather than any basic factual objections to appellees' complaint for relief.

jurisdiction in this area, the areas outside of the city. The city had no zoning or development controls other than subdivision platting process. The properties were required within five miles of the city limits to subdivide just as though they were inside of the city. We, being the City, and I am not referring only just to the Planning Department, but also then to the traffic department and other development related departments, *recognized that this area was an emerging commercial area, and that was not our personal speculation*. It was publicly announced by Rector-Phillips-Morse in the development of Charles Valley, that they intended to develop Charles Valley and the area just to the east of the subject property as a commercial area, and there were evidences of other commercial developments in the area, so we had no way of restricting or confining or stopping commercial areas, so the city did the best they could to anticipate the future commercial development of the area. *Therefore, all of the streets, or collector streets, and all of the setback lines, are based on the assumption that the area would develop as a commercial area.*" (Emphasis added)

Gerald L. Breeding, one of the owners of the subject property and developer of the commercial property adjacent to the property in question, testified:

"A. . . At the time we acquired the property, although the property was outside of the city limits, it was our understanding that if the property was within five miles we had to comply with subdivision requirements, which there were many to be complied with. In fact, we are the ones who put Green Mountain Drive in from its inception. We had curb and gutter requirements, sidewalk requirements, drainage requirements, and also had to bring water to the area from about Regal Drive and Rodney Parham Road down to the intersection. We had to bring an eight inch water line from that point down to where Green Mountain Drive is presently and all the way down Green Mountain Drive to comply with the subdivision requirements."

While Mr. Griffin, appellant's expert witness, testified

about an evolving land use in the area that was not commercial, he testified as follows on cross-examination:

"A. . . . I was speaking in terms of the entire area, as opposed to that area limited to the east of Green Mountain.

Q. But, now, are not these apartments which are in place, and rather large and have been there for quite sometime, a complete buffer to any development that might occur to the west? How can there be any impact from this tract when apartments are setting between this tract and the property west − ?

A. I wouldn't dispute that.

Q. It is a buffer?

A. I wouldn't dispute that the development of the subject tract commercially would not impact areas to the west of Fox Run or Greenwood Forest or Williamsburg. The concern is the ultimate development of the unused property to the east of Green Mountain.

. . .

Q. Other than the Berkshire condominiums where is there emerging residential use that you are talking about?

A. What I am referring to is the increased interest in condominium and multi-family type of development as an alternative to single family, and the fact that at numerous locations in west Little Rock and in this general area such projects are undergoing, and I think what we are going to see is that much of the property presently zoned for commercial and office and other intensive uses will ultimately be used for that purpose within the area encompassed in this map.

Q. But other than the area encompassed in this plat, which is, of course, corresponding to this plat, what is

the residential use there, the emerging residential use you talk about, except Berkshire condominiums? Isn't Rodney Parham all commercial? Isn't it commercial here at the corner?

A. Certainly.

Q. Isn't Merrill Drive going commercial and Market street going commercial? Isn't Shackleford going commercial? Where is the residential use other than the Berkshire condominium monopoly?

A. Well, I would reiterate that when you look at this area in a broad context it would be easy to detect this development pattern emerging.

Q. Well, where is it?

A. Well, that property just to the west on Rainwood Drive.

Q. Buffered by the apartments from this site?

A. Well —."

Relative to the highest and best use of appellees' property, Mr. Breeding testified:

"Q. Why is it [the subject property] not suitable for residential use or an office use?

A. Well, mainly because of the size of the tract remaining, 1.8 acres. It couldn't be used for apartments because of density and amenities that would be required to be marketable. It certainly is not a location for offices in that it is not on any major roadway such as Rodney Parham Road, or the interstate, and that pretty much restricts it to a commercial use to be used as a convenient area for the market that is already built into the area."

Mr. Venhaus testified:

"A. . . . I think general commercial zoning and development of the site is the highest and best use for that property."

Mr. William B. Putnam, expert witness in behalf of the appellees, testified:

"A. In my opinion the highest and best use for the subject property is an "F-commercial" use or a "C-3" under the present codes, or a "G", but a commercial use within the classification of the commercial uses in the area."

The basis of appellant's resistance to appellee's request for rezoning the subject property to commercial may be summarized:

While appellee's property should not be classified as "A" Single-Family, given the surroundings in which the property is situated, it seems that a "Quiet Business' classification of a "lower medium-density apartment or condominium developments, "would be appropriate, provided the property north of appellees' property 'designated as "G-1" ' would be used for either office or apartment use."

Furthermore, appellant asserts that there seems to be no compelling need for a convenience store on the subject property, since such a facility is presently in existence one block north of appellees' property at Green Mountain Drive and Rodney Parham Road; and that the establishment of a convenience facility would have a negative effect on the continued trend of residential development in the area.

It is universally recognized that a municipality may adopt and administer comprehensive zoning regulations under its police powers in order to encourage and promote a systematic growth and development of a community, or for the protection of the public safety, health and morals. It is also equally well recognized that when decisions of a zoning board are predicated on planning principles, the expertise and discretion of planning authorities, a court will not interfere with such decisions unless it is clear that the decisions

are arbitrary, capricious and unreasonable. In other words, while a zoning agency has wide discretion in administering zoning regulations, its powers are not absolute and un-limited; and where it has been demonstrated that there has been an abuse of the police powers or a decision impinges due process, a court of equity will intervene in order to afford relief. *See: City of Little Rock* v. *Sun Building & Developing Company*, 199 Ark. 333, 134 S.W. 2d 583 (1939).

It is also settled law that a decision, as here, on appeal from a chancery court will be affirmed where the holding is not clearly against the preponderance of the evidence. This proposition, of long duration, has been reaffirmed by the adoption of Rule 52, of Arkansas' Rules of Civil Procedure, which became effective July 1, 1979:

> ". . . Findings of fact shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses . . . ."

*See also: Charles M. Taylor* v. *City of Little Rock, et al*, 266 Ark. 384, 583 S.W. 2d 72 (1979).

After carefully reviewing the evidence and giving credence to the legal concepts just mentioned, we are persuaded that the evidence here is so overwhelmingly supportive of appellees' position and the chancellor's findings that we have no difficulty in affirming the trial court's decision. The evidence in this case does not lend itself to a situation where the proof is evenly balanced or so conflicting that the better part of discretion would have required the trial court to defer to the wisdom and discretion of the Board of Directors of Little Rock. Stated differently, we are of the view that reasonable minds could not differ as to the inescapable conclusion to be drawn from the evidence here that appellant's decision to deny appellees' request for rezoning their property to commercial does not support sound planning.

The area of land which surrounds appellees' property is pretty much restricted to commercial use or is zoned for com-

mercial use. Moreover, the subject property is pretty much restricted to commercial use because of its size and location.

Mr. Venhaus, former Director of Planning for Little Rock, testified that it became evident in the early seventies that the area was emerging "commercial" and that inasmuch as the City of Little Rock had no way of restricting the commercial development, since the area was outside of the corporate limits of the city, the city did the next best thing, in the anticipation of the future commercial development of the area, to require all developers to construct proposed streets, collector streets and setback lines in accordance with commercial standards.[2]

Mr. Breeding emphasized that the subject property is not suitable for residential or office use; that it could not be used for apartment use because of "density and amenities that would be required to be marketable;" and that the property is really restricted to commercial use as a convenience outlet for an existing market. Mr. Putnam also acquiesced in this conclusion by stating that the highest and best use for the property is a commercial classification.

Mr. Griffin, appellant's witness, conceded that the apartment complexes served as a complete buffer to any development that might occur to the west of appellees' property and, consequently, there would be no impact to residential districts west of the apartments if the property were rezoned commercial. Moreover, when Mr. Griffin was pressed, on cross-examination, to identify "the residential use other than the Berkshire condominium monopoly" in the immediate area, he referred to property west of Rainwood Drive which is buffered by the apartments from appellees' property.

We are persuaded that the factual situation before us is not comparable to a situation where the subject property is an isolated tract of land is a high density residential area and

---

[2]While the City of Little Rock had no zoning or development control over the area "during the early seventies," the city did have authority to approve subdivision platting of properties within five miles of the corporate limits of Little Rock.

the subject property is particularly desirable for a business use suitable only to the inclination of the owner. No land owner resisted appellees' request for rezoning. As a matter of fact, the Planning Commission's report registered virtually no negative responses while appellees' application for rezoning was under investigation.

We hold that the denial of appellees' application for rezoning of the subject property to F-commercial was an arbitrary denial of appellees' right to make use of their property to its highest and best use which would not in any way impact adversely on any adjacent property. *Metropolitan Trust Company* v. *City of North Little Rock*, 252 Ark. 1140, 482 S.W. 2d 613 (1972); *City of Blytheville* v. *Thompson*, 254 Ark. 46, 491 S.W. 2d 769 (1973); *Little Rock* v. *Pfeifer*, 169 Ark. 1027, 277 S.W. 883 (1925).

Affirmed.

NEWBERN and PENIX, JJ., dissent.

DAVID NEWBERN, Judge, dissenting. This is an appeal from a judgment holding that the Little Rock City Directors' refusal to rezone property from "A" to "F," or from residential to commercial use, was arbitrary and capricious. The question here is whether the chancellor's decision was clearly erroneous or clearly against the preponderance of the evidence. A. R. Civ. P. 52.

The property in question is roughly 1.8 acres located on the southeast corner of the intersection of Rainwood Drive and Green Mountain Drive in the City of Little Rock. The Planning Commission recommended against, and the Board of Directors turned down, the appellees' request that the land be rezoned from "A," which is single family residential, to "F," which is commercial, zoning. The chancellor, after a hearing, determined the board acted in an arbitrary and capricious manner. His decree stated as his reason that the property in question is in an "established and expanding business district." In defining the "business district," the trial court and the majority here considered all the property in an at least 65-acre area bounded by Rodney Parham Road

on the north, I-630 on the east and Green Mountain Drive on the west.

The "established and expanding business district" test applied by the chancellor is based upon our supreme court's decision in *Little Rock* v. *Pfeifer*, 169 Ark. 1027, 277 S.W. 883 (1925). That case used the above-quoted language in holding that: "[w]hen a business district has been rightly established, the rights of owners of property adjacent thereto cannot be restricted, so as to prevent them from using it as business property." 169 Ark. at 1031. That language has, of course, been limited over the years, and in *Baldridge* v. *City of North Little Rock*, 258 Ark. 246, 523 S.W. 2d 912 (1975), and *City of Conway* v. *Housing Authority*, 266 Ark. 404, 584 S.W. 2d 10 (1979), the supreme court made it clear that the mere fact that property is located adjacent to commercial property does not entitle its owner to a rezoning for commercial use. The main question presented in this case, and glossed over by the majority, is the definition of "established and expanding business district."

My problem with the appellee's argument and the chancellor's decree is that there is hardly any evidence that the land in question here was in an "established and expanding business district." The land to the north, across Rainwood Drive is zoned G-1 (commercial), but it has not been commercially developed. To the immediate west is a large apartment (residential) complex area zoned "D." To the immediate south and on some of the east boundary is an area occupied by some "mini warehouses" which serve mostly as boat storage facilities for persons who dwell in the nearby apartments, and which constitute a non-conforming use in an area zoned "A." The remainder of the property on the immediate east is zoned "A" and is largely undeveloped. There is a day care center just south of the "mini warehouses." That is a commercial, non-conforming use, consisting of a single family dwelling converted to that use.

Thus, there is no actual commerical development on any property that is adjacent to the land in question. The most that can be said for the trial court's application of the *Pfeifer* rule is that the land to the north is zoned commercial, but is

not so developed, and the adjacent land to the south is subject to a non-conforming industrial use.

The only case cited by the appellees in the portion of their brief devoted to showing how the *Pfeifer* principle should be applied in their favor here is *Metropolitan Trust Co.* v. *City of North Little Rock*, 252 Ark. 1140, 482 S.W. 2d 613. The case is cited for the proposition that it was proper for the chancellor to consider the zoning of the adjacent lands. I agree, but the mere existence of the "G-1" land across the street does not constitute much to establishment of a preponderance of the evidence. One look at the *Metropolitan Trust* case is enough to show why the principle of *Pfeifer* required zoning there but not here. The land in question was the southwest quandrant of the intersection of Highway 67-167 and McCain Boulevard, two primary traffic arteries, and all of the other three quadrants were zoned commercial. Even the vacant land in question had been in commercial use before it was annexed to North Little Rock. Thus, a determination there that the area was not in an "established and expanding business district" was against the preponderance of the evidence, and that is what the supreme court held.

The appellees want us to look at the larger picture to include such a clearly commercial "strip" as Rodney Parham Road which is many blocks away, and other "F" and "G-1" zoned lands which are separated from the site by property zoned "A." I know of no authority which would permit such an approach, and indeed I find it a dangerous one. That there is a good deal of commercial or potentially commercial property in an area 65 acres or more surrounding land under consideration which is less than two acres does not entitle the small piece to commercial zoning. In my opinion, to suggest that because there is commercial development in a 65-acre tract any property in that tract is entitled to commercial classification is to suggest the demise of zoning altogether.

Although the *Pfeifer* case was not specifically cited by our supreme court, the principle of the case as it has evolved, was dealt with in *Lindsey* v. *City of Fayetteville*, 256 Ark. 352, 507 S.W. 2d 101 (1974). The supreme court referred with approval to the chancellor's decision of conditions surround-

ing the land sought to be zoned commercial which request the city board had denied. The conditions were strikingly similar to those here:

> It also must be observed that the testimony equally shows by the aerial photo that although you must concede the existence and near proximity of light industry and commercial areas, and . . . the sewage pumping station, it is equally true that on two of the four sides of adjacent property, it is all residential . . . . [256 Ark. at 354]

Admittedly, the *Lindsey* case differs in that there the decision was to affirm the chancellor's decision that the board's action was *not* arbitrary and capricious. However, in none of the extensive number of cases reviewed in Lindsey was there a review of the circumstances surrounding the site being considered in terms suggested by the majority here. Application of the *Pfeifer* principle in *Lindsey* and all other cases of which I am aware was limited to consideration of the area adjacent to the site in question. Given my view that that limitation is appropriate and necessary, I find the preponderance of the evidence here clearly favored the appellant.

Other than their demonstration of the physical circumstances in the area, the appellees presented expert testimony which dwelt upon opinions as to how the property should have been zoned by the board. None of that testimony was sufficient to base the conclusion the board's decision was arbitrary and capricious. The chancellor's decree does not mention this testimony but is based upon facts demonstrable by the zoning code, an aerial photo and the planning commission report which was before the board. These matters were appropriately considered, but the decision was clearly against the preponderance of this evidence if the *Pfeifer* test is still to be applied.

The majority opinion quotes testimony mentioning the commercial type concrete work done by the appellees when the big tract was developed. I assume this work was done to meet the City's requirements, but that it was done with the expectation of making a profit on the subdivision and with no

guarantee that the property would subsequently be zoned to suit them when it was annexed.

Nor do I understand the majority opinion's fixation on "highest and best use" which is not defined by it. If, as I suspect, in this context that means "most remunerative use," then what piece of border line or even nearby property is protected against commercial rezoning?

In my opinion decisions like this one strike hard at the zoning concept. When the *Pfeifer* decision is properly applied, this is not even a close case. I find the failure of the majority opinion even to discuss the rationale of that case, which was the focal authority for the chancellor's decision and the main bone of contention on this appeal, to be, to say the least, distinctive.

For all of these reasons, but mostly because I believe the majority has failed to apply correctly the *Pfeifer* case holding, I respectfully dissent.

JUDGE PENIX joins in this dissenting opinion.