CITY OF BATESVILLE and Dr. Bob SMITH et al
*v.* Preston W. Grace et al

75-184                           534 S.W. 2d 224

Opinion delivered March 15, 1976

*Pickens, Boyce, McLarty & Watson,* by: *James A. McLarty,* for appellants.

*Highsmith, Tatum, Gregg & Hart,* by: *Samuel C. Highsmith, W. D. Murphy Jr.,* for appellees.

CARLETON HARRIS, Chief Justice. This appeal relates to the rezoning of two tracts of land located on Highway 167 in Batesville; the tracts are contiguous, one belonging to appellee Preston Grace (hereafter referred to as the "Ball

tract"), and the other belonging to Grace and appellees Highsmith and Rogers (hereafter called the "Highsmith tract"). Appellants, the City of Batesville, and 23 homeowners living near the tracts (who intervened), contend that the chancellor erred in finding that the action of the City of Batesville in denying the C-1A classification to the subject tracts was arbitrary, capricious, and unreasonable.

The Ball tract, 381 ft. of frontage on Highway 167, was purchased by Grace in October of 1971 for the sum of $69,-000, the property being zoned residential at the time; likewise, the Highsmith tract was zoned residential.

The unusual nature of the court's decree necessitates a step-by-step review of the events that occurred.

1. *December 7, 1971:* Appellees filed their petition for rezoning from R-1 to C-1A with the Planning Commission.

2. *March 7, 1972:* The Planning Commission held hearings on two nights, at which both appellants and appellees were heard, and voted 4-3 to recommend to the City Council the rezoning of the property to C-1A.

3. *April 25, 1972:* The City Council voted 4-3 to approve the rezoning. The mayor vetoed the measure.

4. *May 29, 1972:* The City Council met again, with the mayor reading aloud the reasons for his veto. A motion to override the veto failed to pass, 3-3 (one councilman abstaining).

5. *June 21, 1972:* Appellees appealed the decision of the City Council to Circuit Court.

6. *October 20, 1972:* Appellees moved to transfer the case to chancery, simultaneously amending their complaint to allege that the mayor's veto was arbitrary and capricious. The cause was transferred to chancery on October 23, 1972, as two cases, Nos. 4975 (the Ball tract) and 4976 (the Highsmith tract). The amended

complaints alleged three specific grounds for the charge of arbitrary and capricious action:

a. The mayor had refused to decide the application on the record before him.

b. The veto disregarded the findings of the Planning Commission and the vote of the Council.

c. The veto deprived the appellees of their property without due process of law.

After an extended trial, the chancellor entered a thirty-one page opinion containing the court's findings, and at the same time an interlocutory order embracing the findings was entered and it was stated that the "summary of specific findings of the court and mandatory requirements for rezoning . . . is hereby made the court's interlocutory order regarding this case." Further, "that a final order in this cause will be entered by the court pending the resolution of the procedures as laid down in this interlocutory order." The chancellor commented that the greatest fear of the residents, whose properties lie west and southwest of the land sought to be rezoned, was an increased traffic flow resulting from commercial development, but he noted that this detriment would be nominal if traffic could only enter the tracts from the highway. During the trial, testimony was offered indicating that the Independence Savings and Loan Association's new office building would be placed on the Ball tract.[1] Plans were offered relative to the Savings and Loan office which the court termed "acceptable." The following findings were then made:

"(2) That the Court further finds that since both tracts are located along Highway 167 where there is extremely heavy traffic, and in or near a growing and expanding commercial area that the said tracts, although they might be used for residential purposes, are not desirable for such use. That the said tracts are much

[1] Grace is a stockholder of the Savings and Loan company and Guy Mosely, Chairman of the Board of the company, likewise testified relative to the plans for the new office. There was never any specific proposal offered relative to the use that would be made of the Highsmith tract.

more desirable for commercial use or purposes, and the highest and best use of the said property would definitely be for commercial purposes, and this is more particularly true of the Highsmith tract.

"(3) That the fear of increased traffic among the intervenors in the residential area which might come about from the rezoning of the tracts in question can or may be largely alleviated by a mandatory requirement that all major traffic come in from the east off the said Highway 167, or in other words the main and only entrance for traffic in general to any established business would be from Highway 167 and not from the section on the west side of the land to be rezoned where the homes of the intervenors are principally located.

"(4) That no presently existing or dedicated streets or roads not now open shall be opened up without approval of the City Council of Batesville, and upon recommendation of the City Planning Commission, and only after an opportunity had been afforded the intervenors to be heard on the matter.

"(5) That the Court finds that the said rezoning of both the Ball and Highsmith tracts from a R-1 to C-1A as prayed for by the petitioners should be granted upon conditions hereinafter set out, and that the Mayor's veto of the action of the City Council relative to the said proposed rezoning is arbitrary, discriminatory and unreasonable based on his objections set out in his veto message, and for the further reasons heretofore mentioned.

"(6) That arrangements must be made and plans set out specifically in writing that all major traffic must come off Highway 167, and that the petitioners must either execute a bill of assurance or such other covenants or agreement to meet the requirements of the City Planning Commission and the City Council in this respect so as to guarantee adequate protection to the intervenors against any possible excess traffic, and must provide buffer zones where necessary to residents nearest the new proposed business sites."

Appellees were then directed to submit to the City Planning Commission and City Council a general outline of plans for the use and development of the property within six weeks; the Council was given two weeks to accept, reject, or modify such proposals, but the action of the Council would be subject to review by the court. The Council was ordered to report to the court within sixty days from the date of the order unless the court should extend the time. Further findings were then made:

"(9) The cost of this action is assessed against the plaintiffs or petitioners in this suit since they are the ones who brought it and are seeking the benefits therefrom, unless, however, this cause of action is strenuously resisted by the intervenors [residential property owners] herein, in which event the Court may then upon final hearing or entry of a final decree in this cause of action adjust the costs otherwise if he should deem such action equitable. Any attendance of the intervenors or their attorneys at meetings of the City Council to procure the rights given them under this decree will not be considered strenuous objections or resistance but only to protect the rights given them under this temporary order. However, further outright resistance to the proposed rezoning on a limited basis, as defined and set out by the Court herein, will be considered strenuous resistance.

"(10) In event of any unwillingness on the part of the petitioners herein to comply with the orders and findings of this Court as heretofore set out may be grounds for the denial of the plaintiff's petition in toto upon final hearing or review of this cause of action.

"(11) Any requirement further made by the City of Batesville relative to the types of buildings and establishment of proposed businesses or opening or closing of streets in the affected zoning area, or other requirements needed to protect the intervenors must be reasonable, practicable, and based on sound business judgment of said city officials and not necessarily on prejudice or ill feelings."

On July 22, 1974, the appellees presented to the Planning Commission their plan in compliance with the court order, details of which, under the view we take, are unnecessary to this opinion. It is significant, however, that the report announced that Independence Savings and Loan Association could not contract to build its new office on the Ball tract because of rising construction costs and changed economic conditions,[2] and that a binding commitment from anyone to develop the tracts could not be obtained until the proposed rezoning became final. The report did offer to exclude ten specific types of businesses from the property. On September 19, the Commission voted 5 to 2 to recommend that the property remain residential, notwithstanding the chancellor's statement to the Chairman of the Commission that he had already rezoned the property in the June 10 order. However, on the basis of the fact that the property was being rezoned, the Commission offered certain suggestions as proposed by the court as to restrictions and recommendations and this report, along with the minutes of the meeting, was sent to the City Council. The Council voted 5 to 3 to adopt the recommedation that the property remain residential rather than becoming commercial, but alternatively, approved the suggestions and restrictions recommended by the Planning Commission.

Thereafter, these recommendations were filed with the court, in compliance with its order, and subsequently, the chancellor entered his "Supplementary Findings and Opinion," in which he set out that the Commission and the Council had "voted to accept the Court's plan for a rezoning of the land" and a decree was entered wherein part of the suggestions were accepted, part rejected, and additional restrictions were entered on the court's own motion. The following provisions *inter alia* are found in the decree:

"That the Court finds that the following types of businesses ordinarily permitted under a C-1A classification should be and are by the orders of this Court specifically prohibited, namely:

---

[2]The proposed construction of this building appears to have carried considerable weight with the court.

(6) Dry cleaning and laundry establishments

(8) Automotive service stations

(9) Automotive repairs and sales, both new and used

(10) Warehousing — commercial

(11) Wholesaling

(15) Commercial recreation, such as bowling alleys, golf driving ranges, drive-in theaters, skating rinks, and such like

(16) Automotive laundries of any nature whatsoever

(19) Drive-in restaurants, ice cream stands and such like

(23) Hospitals and nursing homes of any nature whatsoever, and funeral homes.

(24) Mobile home parks ***

"The Court further reiterates the findings in paragraph 6, page 29 in his original findings that all major traffic must come in off Highway 167 or from the east, and that the petitioners must provide adequate protection to the intervenors or their property against excess traffic coming on to the newly zoned (Ball-Highsmith) property, particularly where necessary to protect the residents nearest any proposed business sites, and to provide necessary buffer zones where absolutely needed.

"That the petitioners should and must provide a fence approximately five (5) feet in height extending along and near the west boundary line, at least 6 inches over on the petitioners' lands and immediately east of the intervenors' land, to be built and maintained at the expense of the petitioners or their successors in title. [Here follows a description of the location of the fence.] ***

"That no buildings or constructions on the property to be rezoned shall exceed two (2) stories in height. * * *

"It is the thinking of the Court that neither the petitioning landowners or their employees or agents should be prohibited from coming in on any of their own lands from any direction so long as they do not intrude, impose, or trespass on adjacent land owners or lands of the intervenors herein. But this Court thinks and finds that such private entrances should be from the south, west, or north sides of the lands rezoned and so arranged that the general public might be excluded from any ingress or egress at such private entrances. This arrangement might be affected by means of gates, or chains between posts that might be taken down at times, or other practical means of ingress and egress to the said property."

It is apparent from the portions of the decree(s) set out herein that this is a classic example of judicial rezoning, and thus cannot stand. Let it be remembered that this is not an ordinary equity case, but rather involves only the chancellor's function in determining whether the City's action in granting, or denying, rezoning was or was not arbitrary, capricious, and unreasonable. In *City of Little Rock* v. *Parker,* 241 Ark. 381, 407 S.W. 2d 921, this court said:

"The right and responsibility for classifying the various areas in the city are with the zoning authorities, and their decision will only be disturbed if it is shown that they acted arbitrarily. [Citation omitted.]

"The sole question before this court on appeal is, 'Did the preponderance of the evidence before the Chancellor show that the city acted arbitrarily in refusing to rezone the properties here at issue. . .?' While the word 'arbitrary,' has several definitions, probably the most generally accepted one is, 'arising from unrestrained exercise of the will, caprice, or personal preference; based on random or convenient selection or choice, rather than on reason or nature.' (Webster's Third New International Dictionary, 1961)."

Likewise, in *Tate* v. *City of Malvern,* 246 Ark. 318, 438 S.W. 2d 52, we stated:

"We recently had occasion to recount some fundamental rules of law applicable generally to zoning cases. [Citation omitted.] The burden is on the landowner to preponderantly show, at the trial level, that the action of the city was arbitrary; on appeal we determine whether the trial court's finding was contrary to a preponderance of the evidence; home owners who have relied on residential zoning are entitled to consideration and the use of a particular tract may be reasonably restrained so as not to cause them injury; and rezoning cannot be justified solely on the ground that it is necessary to put a particular tract to its most remunerative use."

This court has ruled that judicial intrusion upon this legislative prerogative violates the constitutional requirement of separation of powers. *Wenderoth* v. *City of Fort Smith,* 251 Ark. 342, 472 S.W. 2d 74. In *Wenderoth,* the court held unconstitutional a statute that purported to give landowners the right of *de novo* trial in circuit court, as a mode of appeal from municipal building and zoning decisions. The court's holding in *Wenderoth* is relevant to this appeal:

"Therefore, when a city exercises the power conferred upon it by our state legislature, the city is acting in a legislative capacity which is co-equal with the power of the legislature itself. *Little Rock Ry. & Elec. Co.* v. *Dowell,* 101 Ark. 223, 142 S.W. 165 (1911). There we said that when a municipality exercised the delegation of this legislative authority, the courts cannot take away the discretion vested in the city's legislative body. ***

". . . By this method of appellate review *de novo* there is attempted to impose upon the circuit court a function of a non-judicial character in a matter that is exclusively within the discretion and legitimate power of the city's legislative body. The result would be to substitute the judgment of the circuit court for that of a municipal law-making body. This is contrary to Article 4 of our constitution which prohibits intrusion by the judiciary upon the legislative domain. ***

"However, zoning regulations and ordinances are not immune to appellate review. Our chancery courts have the power to grant relief in appropriate proceedings when a zoning ordinance is arbitrary, capricious, or unreasonable. [Citations omitted.] On this restricted basis our chancery courts have reviewed the validity of zoning ordinances. In other words, the enactment of zoning ordinances is a legislative function subject only to appellate review to determine whether the city's legislative body acted arbitrarily, capriciously, or unreasonably in the enactment of the ordinance."

Thus, a dissatisfied landowner is not entitled to a *de novo* review in chancery of the city zoning action. *Wenderoth v. Freeze, Mayor,* 248 Ark. 469, 452 S.W. 2d 328.

In the instant case the chancellor committed two errors in his review of the city zoning decision. First, his opinion on June 10 clearly shows that he focused on the question of the arbitrariness of the mayor's veto, instead of the action by the city — the refusal to override the veto.

Second, as previously stated, the trial court exceeded the permissible bounds of judicial review of a zoning decision. The decrees entered in this case amply evidence that the chancellor tried the zoning question *de novo* and substituted his decision for that of the City Council, even to the extent of specifically modifying the city zoning ordinance by placing building restrictions on the tracts in question, along with the type of fencing, etc. No decision of this court has ever sanctioned any procedure whereby the trial court originates and imposes such specific restrictions in a rezoning case, though the court has upheld rezoning in cases when the developer had committed himself to restrictions for a definite project for the use of the land. *Metropolitan Trust Co. v. North Little Rock,* 252 Ark. 1140, 482 S.W. 2d 613; *Little Rock v. Hocott,* 220 Ark. 421, 247 S.W. 2d 1012. In the instant case, however, the impetus for the restrictions came from the trial court itself — in its June 10 opinion — and several of the restrictions finally imposed in the decree of November 4, 1974, apparently originated with the court.

Of course, the very fact that the chancellor found it necessary to place numerous limitations upon the rezoning, is probably the best evidence that the Council did not act arbitrarily.

In accordance with what has been said, it appearing that the action of the Council in refusing to rezone the property to C-1A was not arbitrary, capricious or unreasonable, the decree[3] should be, and hereby is, reversed.

It is so ordered.

BYRD, J., not participating.

---

[3]Both cases were included in the same decree.