CITY of LOWELL, et al. *v.* M & N MOBILE HOME PARK, INC.

95-521                                    916 S.W.2d 95

Supreme Court of Arkansas
Opinion delivered February 12, 1996
[Petition for Rehearing denied March 11, 1996.*]

---

* JESSON, C.J., and GLAZE and CORBIN, JJ., would grant.

*Pawlik & Associates*, by: *Kevin J. Pawlik* and *Ella Maxwell Long*, for appellants.

*Matthews, Campbell & Rhoads, P.A.*, by: *David R. Matthews*, for appellee.

ROBERT H. DUDLEY, Justice. This is a zoning case. Appellee M & N Mobile Home Park, Inc., purchased 7.19 acres of land in Lowell in 1971. Between 1971 and 1986, it operated a mobile-home park on slightly less than two of the acres. The other five acres remained unoccupied. In 1986, the city passed a zoning ordinance that designated the two acres as MHP, zoned for a mobile-home park, and designated the remaining five acres as R-1, for single-family dwellings. In 1994, appellee petitioned the planning commission to rezone the five acres to MHP so that it could utilize the full seven acres as a mobile-home park. The

planning commission denied the application. Appellee appealed to the city council. The council upheld the commission. Appellee filed suit and asked the chancery court to rezone the five-acre tract to MHP because the action of the city council was arbitrary. The trial court granted the relief and rezoned the five acres as MHP. We reverse and dismiss.

## I.
### A. Constitutional Provisions

The powers of government are divided into three separate branches of government. Ark. Const. art. 4, § 1. The legislative power of state government is vested in the General Assembly with the right of the initiative and referendum reserved to the people. Ark. Const. amend. 7, § 1. The General Assembly can delegate the legislative power to enact ordinances to municipal corporations. *Little Rock* v. *North Little Rock*, 72 Ark. 195, 79 S.W. 785 (1904). We have written that when a municipality acts in a legislative capacity, it exercises a power conferred upon it by the General Assembly, and consequently, an act of a municipality is the co-equal of an act of the General Assembly. *Little Rock Ry. & Elec. Co.* v. *Dowell*, 101 Ark. 223, 142 S.W. 165 (1911). The General Assembly has given to municipal corporations the power to enact zoning ordinances. Ark. Code Ann. 14-56-402 —14-56-425 (1987). A municipal corporation's exercise of its zoning power is the co-equal of an act by the General Assembly.

The legislative power includes discretion to determine the interests of the public as well as the means necessary to protect those interests. Within constitutional limits, the legislative branch is the sole judge of the laws that should be enacted for the protection and welfare of the people and when and how the police power of the State is to be exercised. *Missouri & North Arkansas R.R. Co.* v. *State*, 92 Ark. 1, 121 S.W. 930 (1909).

One branch of government shall not "exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted." Ark. Const. art. 4, § 2. For each branch to operate as constitutionally envisioned, one branch must not be subordinated to either or both of the other branches, and one branch must not take control of one or both of the other branches. The legislative branch has discretion to determine the interests of the public, but the judicial branch

has the power to set aside legislation that is arbitrary, capricious, or unreasonable. *Wenderoth* v. *City of Fort Smith*, 251 Ark. 342, 472 S.W.2d 74 (1971). This is a limited power, and the judiciary, in acting under this limited power, cannot take away the discretion that is constitutionally vested in a city's legislative body. *City of Little Rock* v. *Breeding*, 273 Ark. 437, 619 S.W.2d 664 (1971). The chancery court has subject-matter jurisdiction to determine whether a zoning enactment is arbitrary, capricious, or unreasonable. *City of Little Rock* v. *Pfeifer*, 318 Ark. 679, 887 S.W.2d 296 (1994); *City of Little Rock* v. *Breeding*, 273 Ark. 437, 619 S.W.2d 664 (1981); *Wenderoth* v. *City of Fort Smith*, 251 Ark. 342, 472 S.W.2d 74 (1971).

██ This court's foundation case involving zoning and the separation-of-powers doctrine is *Herring* v. *Stannus*, 169 Ark. 244, 275 S.W. 321 (1925). There we wrote:

> [The city council's] action is final unless we can say that the council abused its discretion. But this discretion, in so far as a discretion abides, is vested in the council, charged by law with the duty of passing on the question, and does not rest in the courts which review the council's action.
>
> . . .
>
> The question is not what a member of the court might decide if the question were submitted to him as a matter of discretion, but rather is whether it can be said that the council abused its discretion, and we may not say that such was the case unless that fact clearly appears.

*Id.* at 256, 275 S.W. at 325 (citations omitted). In recent years, we have frequently written that the judicial branch does not have the authority to review zoning legislation *de novo*, as that would constitute an unconstitutional taking of the power of the legislative branch. *See, e.g., Smith* v. *City of Little Rock*, 279 Ark. 4, 648 S.W.2d 454 (1983); *City of Conway* v. *Conway Housing Authority*, 266 Ark. 404, 584 S.W.2d 10 (1979).

## B. The *Pfeifer* case

There was an aberration in our case law, which is set out only to show that it existed and that it has ended. Shortly after we correctly decided the foundation case of *Herring* v. *Stannus*,

we decided *City of Little Rock* v. *Pfeifer*, 169 Ark. 1027, 277 S.W. 883 (1925), and in essence, held that the review of zoning appeals could be by trial *de novo* rather than by solely determining whether the enactment by the legislative branch was arbitrary. The effect was to judge the wisdom of the enactment in violation of the separation-of-powers doctrine. We began to retreat from the *Pfeifer* doctrine in the 1953 case of *Evans* v. *City of Little Rock*, 221 Ark. 252, 253 S.W.2d 347 (1953), and backed further away from it in the 1966 cases of *Downs* v. *City of Little Rock*, 240 Ark. 623, 401 S.W.2d 210 (1966) and *City of Little Rock* v. *Parker*, 241 Ark. 381, 407 S.W.2d 921 (1966). The *Pfeifer* doctrine led to criticism. Morton Gitelman, *Judicial Review of Zoning in Arkansas*, 23 Ark. L. Rev. 22 (1969); Morton Gitelman, *Zoning — The Expanding Business District Doctrine in Arkansas: An Obstacle to Land Use Planning*, 28 Ark. L. Rev. 262 (1975). In *Baldridge* v. *City of North Little Rock*, 258 Ark. 246, 523 S.W.2d 912 (1975), we re-examined the *Pfeifer* doctrine and almost laid it to rest. *See* Robert R. Wright, *Zoning Law in Arkansas*, 3 UALR L.J. 421, 477 (1980). Finally, in *City of Little Rock* v. *Breeding*, 273 Ark. 437, 619 S.W.2d 664 (1981), we noted the many cases that "restricted, limited and modified the holding in *Pfeifer*," and said the case now has "little if any validity." *Id*. at 447-48, 619 S.W.2d at 669-70. In summary, we have returned to the foundational doctrine of *Herring* v. *Stannus*, which provides that the judicial department can set aside a legislative enactment only when the legislative branch has abused its discretion in an enactment because of arbitrariness.

## C. Standard of Review

### 1. Presumption of Validity

In reviewing cases involving legislative enactments, such as zoning ordinances, there is a presumption that the legislative branch acted in a reasonable manner, and the burden is on the moving party to prove that the enactment was arbitrary. *City of Little Rock* v. *Breeding*, 273 Ark. 437, 619 S.W.2d 664 (1981). In *Wenderoth* v. *City of Fort Smith*, 251 Ark. 342, 472 S.W.2d 74 (1971), we quoted with approval from *Little Rock Railway & Electric Co.* v. *Dowell*, 101 Ark. 223, 142 S.W. 165 (1911), as follows:

It is only an arbitrary abuse of the power which the courts should control; and when the exercise of that power and discretion is attacked in the courts, a presumption must be indulged that the council has not abused its discretion, but has acted with reason and in good faith for the benefit of the public. To proceed upon any other theory would be to substitute the judgment and discretion of the courts for the judgment of the members of the council with whom the lawmakers have seen fit to lodge this power.

*Id.* at 227, 142 S.W. at 166. This presumption is a presumption of law and not merely an inference of fact. *See Rockefeller* v. *Hogue,* 244 Ark. 1029, 429 S.W.2d 85 (1968).

## 2. Rational Basis

■ The chancery court has a limited function in reviewing legislation. It acts not as an ordinary court of equity, but instead acts only to determine whether the legislative action was arbitrary, capricious, and unreasonable. *City of Batesville* v. *Grace,* 259 Ark. 493, 594 S.W.2d 224 (1976). We recently defined "arbitrary" and "capricious" in *City of Little Rock* v. *Pfeifer,* 318 Ark. 679, 887 S.W.2d 296 (1994), as follows: Arbitrary is "decisive but unreasoned action," and capricious is "not guided by steady judgment or purpose." The definition most easy to apply was given in *City of Little Rock* v. *Breeding,* 273 Ark. 437, 445, 619 S.W.2d 664, 668 (1981), when we said that the enactment was not arbitrary if there was *any reasonable basis* for its enactment.

## 3. The *Bentley* case

■ In appellate review of ordinary equity cases there are two different components of the chancellor's ruling that are considered. The appellate court will not set aside a chancellor's *finding of fact* unless it is clearly erroneous. This deference is granted because of the regard the appellate court has for the chancellor's opportunity to judge the credibility of the witnesses. Ark. R. Civ. P. 52. However, a chancellor's *conclusion of law* is not entitled to the same deference. If a chancellor erroneously applies the law and the appellant suffers prejudice, the erroneous ruling is reversed. Manifestly, a chancellor does not have a

better opportunity to apply the law than does the appellate court. In an early zoning case, which was actually determined on appeal by a chancellor's finding of fact, we wrote that the "findings of fact made by the court are abundantly supported by the testimony," and as a result, we affirmed the ruling by the chancellor. *City of Little Rock* v. *Bentley*, 204 Ark. 727, 731, 165 S.W.2d 890, 892 (1942). Unfortunately, through seemingly rote citation, the *Bentley* statement became the *Bentley* dogma. As an illustration, in *Olsen* v. *City of Little Rock*, 241 Ark. 155, 406 S.W.2d 706 (1966), we wrote:

> In a case of this kind the chancellor should sustain the city's action unless he finds it to be arbitrary. No matter which way the chancellor decides the question, we reverse his decree only if we find it to be against the preponderance of the evidence. *City of Little Rock* v. *Garner*, 235 Ark. 362, 360 S.W.2d 116 (1962).

*Id.* at 156, 406 S.W.2d at 706. The *Bentley* doctrine was criticized in a 1969 Law Review Article, Morton Gitelman, *Judicial Review of Zoning in Arkansas*, 23 Ark. L. Rev. 22 (1969), which, in part, states that under *Bentley*, the appellate court "does not even mention whether the decisions of both the planning commission and city council are supported by evidence." *Id.* at 34.

In 1981, in the case of *City of Little Rock* v. *Breeding*, we returned to affirming only the chancellor's *findings of fact* under Ark. R. Civ. P. 52, and held that a trial court could not substitute its judgment for that of the legislative branch. Thus, we have retreated from the *Bentley* dogma, even though we have never expressly overruled it.

### 4. Correct Standard

In summary, the party alleging that legislation is arbitrary has the burden of proving that there is no rational basis for the legislative act, and regardless of the evidence introduced by the moving party, the legislation is presumed to be valid and is to be upheld if the judicial branch finds a rational basis for it. It is not for the judicial branch to decide from evidence introduced by the moving party whether the legislative branch acted wisely.

## II. The Trial Court Proceeding

Appellee offered considerable testimony in the chancery court to show the reasonableness of its request to rezone the five-acre tract. The chancellor apparently was moved by the testimony. The result was that the chancellor's ruling focused on appellee's one tract of land, and, consequently, lost sight of the concept that zoning is by districts and not by individual parcels of land. It is not constitutionally appropriate for a court to determine the substantive merits of the city's refusal to rezone. The fundamental concept of zoning legislation is sound city planning. By focusing on appellee's one tract, the chancery court unintentionally omitted consideration of the statutory design that allows municipalities to prepare plans, make studies on future development, prepare ordinances, make comprehensive studies, make planning-area maps, design streets, and make various other plans "for the coordinated, adjusted, and harmonious development of the municipality and its environs." Ark. Code Ann. § 14-56-402 (1987). The sole issue before the chancery court should have been whether there was a rational basis for the city's refusal to rezone the five acres. After appellee filed its complaint, the city moved to dismiss the complaint on the ground that the "property sought to be rezoned by M & N [appellee] does not qualify under the requested MHP zone because it lacks the necessary frontage on a public street." At trial, witness LeRoy Barker testified that the five acres "has no frontage on any public street." Witness Patsie Christie testified that "[t]here is about a one hundred and fifty (150) foot access along the street into the mobile home park, there is no other access to the property which M & N has sought to rezone other than through the other property owned by M & N where the mobile home park currently sits." Other proof showed that appellees proposed placing seventy mobile homes on the five acres. The zoning ordinance sets out minimum area requirements for both mobile-home parks and individual-dwelling units, as follows:

d. Minimum Area Requirements

    1. Land area 43,560 sq. feet (1 acre)

    2. Land area per dwelling unit 4,355 sq. feet

    3. Front yard setback 25 feet

4. Rear yard setback 25 feet

5. Side yard setback 7 feet (except)

6. Side yard setback from public street 25 feet

7. Frontage on public street 100 feet

The five-acre tract has no street frontage; thus, by itself, it does not qualify for rezoning under the terms of the zoning ordinance. This fact can serve as a rational basis for the refusal to rezone the five acres. M & N might argue that when the five acres is coupled with the two acres, there is sufficient street frontage. One response is that the ordinance does not provide for coupling, but more important, this fact shows that the refusal was fairly debatable, and if it was fairly debatable, it was not "unreasoned" or arbitrary. *City of Little Rock* v. *Pfeifer*, 318 Ark. 679, 887 S.W.2d 296 (1994).

The planning commission heard considerable testimony from neighbors who opposed the rezoning. The chancellor completely rejected this evidence because "the property appears to be capable of use for the purpose requested and it is in a proper area which is consistent with the City's plans." The chancellor's ruling was as follows:

> Mr. Hutchins opposed the rezoning because he lives within three hundred (300) feet of the property and feared that it would decrease the value of the property, be a noise problem and increase the need for police protection and have an impact on the schools. Flossie Clardy expressed that she did not want the mobile homes. Jack Clardy had stated to the Planning Commission that his family owned rental property and started the first mobile home park in the city and that he felt that seventy-five (75) mobile homes on seven (7) acres is too high a density and would impact the police department and schools; and that he would like to have an ordinance to stop mobile homes in Lowell. Brandi Julian stated to the Planning Commission that the rezoning would decrease the value of their property and increase traffic. Dee Lawson stated that it would depreciate her property and that she did not want the mobile home park opened up. Cathryn Anderson opposed the mobile home agreeing with other statements that had

been made. Alta Looby expressed that she wanted no mobile homes. Tom Looby stated that he agreed that he wanted no mobile homes, that the extra traffic problems with seventy (70) mobile homes on an acre would be like a high-rise apartment. James Clardy said he did not favor. Randy Anderson agreed with the comments made by others; and that living in the area, he felt that the mobile home park would be an eye sore. Crystal Christo stated to the Planning Commission that she felt the City should reconsider its current stand on mobile homes, that no more mobile homes should be allowed in Lowell and the existing ones should not be replaced, and that she would like to see an eight (8) foot privacy fence. Carol Wilson stated that she agreed with the statements made, that it would devalue the property and that there should be no more mobile home parks. Robin McDonald expressed that there would be a problem with depreciating property values. Bret Wright stated that he agreed, there should be no additional expansions of mobile home parks. Herbert Johnson owned a duplex on the west side of the mobile home park, but did not live in Lowell, and felt that there should be a buffer zone between the mobile home park and the R1 district. Kendall Morgan, who lives at 314 McClure, had built a privacy fence in cooperation with Mr. Nordsell and stated that the mobile homes depreciate in value and cause all adjacent property to depreciate. Morgan further stated that he found Nordsell to be an honest man, but that he opposed the mobile home park expansion. Merl Atha, whose property adjoins the property on the west, opposed the rezoning also. There were comments by Planning Commissioners McMurray and Hare that have been stated in the testimony about problems with mobile home parks. Based on my review of these comments, there is nothing here for the Planning Commission to base their rejection for the rezoning for, even if they took everything stated to them by those individuals as fact. The property appears to be capable of use for the purpose requested and it is in a proper area, which is consistent with the City's plans.

The ruling rejecting the evidence was in error. The

opinion of local residents, when it reflects logical and reasonable concerns, is an appropriate factor for a planning commission or a city council to consider in zoning cases, and can help form a rational basis for a city's legislative decisionmaking. *Nelson* v. *City of Selma*, 881 F.2d 836 (9th Cir. 1989); *Burns* v. *City of Des Peres*, 534 F.2d 103 (8th Cir. 1976); *Prince* v. *County Comm'rs of Franklin County*, 769 S.W.2d 833 (Mo. App. 1989); *Mira Dev. Corp.* v. *City of San Diego*, 252 Cal. Rptr. 824 (Cal. App. 1988); *Ensign Bickford Realty Corp.* v. *City Council*, 137 Cal. Rptr. 304 (Cal. App. 1977); *Metee* v. *County Comm'rs of Howard County*, 129 A.2d 136 (Md. App. 1957); and 83 Am. Jur. 2d, *Zoning and Planning* § 1065. We find no cases to the contrary. However, the mere fact of public opposition to a zoning application will not supply a rational basis for denial of an application. The public opposition must reflect logical and reasonable concerns. If the rule were otherwise, public opinion *by itself* could justify the denial of constitutional rights and those rights would thus be meaningless. *Ross* v. *City of Yorba Linda*, 2 Cal. Rptr. 2d 638 (Cal. App. 1991).

In the case before us, the public opposition to the zoning application reflected logical and reasonable concerns. The public expressed opposition because of increased traffic on limited roads. This concern is reasonable because the only way M & N could comply with the street frontage requirement was by coupling the five acres with the two acres and by using the street frontage located on the two acres for the entire seven acres. The public opposition that was based on noise was reasonable since there would a greater concentration of considerably more mobile homes. The public opposition that was based on a probable decrease of the value of surrounding lands is reasonable and logical. Five nearby landowners testified that the value of their land would decrease if the tract were rezoned. It is well settled that the owner of property, because of his relationship as owner, is competent to give opinion testimony on an issue of the value of his property regardless of his knowledge of property values and it is not necessary to show that the owner is an expert or is acquainted with the market value of local real estate. Such testimony should be stricken only if it has no reasonable basis. *Arkansas State Hwy. Comm'n* v. *Maus*, 245 Ark. 357, 432 S.W.2d 478 (1968). Thus, their testimony was competent and

the Planning Commission could consider it. In addition, one member of the Planning Commission stated that he moved from a residence solely because it was located next to a mobile-home park, and another commissioner stated that he lived next to a mobile-home park for two and one-half years, and the only disturbances in the neighborhood came from the mobile-home park. In summary, the concerns expressed by the public to the Planning Commission were logical and reasonable, constituted a legitimate factor in the legislative decisionmaking and should not have been disregarded by a court.

This basis, public opposition, was not developed in the trial court, but these cases are not reviewed as ordinary equity cases. They are reviewed only to determine whether the legislative body had a reasonable basis for the enactment. *City of Batesville v. Grace*, 259 Ark. 493, 534 S.W.2d 224 (1976).

In summary, M & N did not meet its burden of proof by showing that there was no rational basis for the city council's refusal to rezone. Consequently, we hold that the legislative branch acted within its discretion in refusing to rezone the tract, and the chancellor violated the constitutional separation of powers by taking discretion from the legislative branch and placing it in the judicial branch.

Reversed and dismissed.

JESSON, C.J., and GLAZE and CORBIN, JJ, dissent.

BRADLEY D. JESSON, Chief Justice, dissenting. I am mindful of the deference to be accorded the legislative decisions of municipalities. I agree with every word the majority says about separation of powers. However, the judiciary should not be completely hamstrung in its review of a city's action. Judicial review exists to protect landowners such as the appellee from unreasoned decisions. This is a case in which the chancellor carefully and thoughtfully exercised his power of review, accorded the city its due deference, and reached a reasonable, supportable conclusion. I would affirm his decision.

Supposedly, the city had two rational bases for its refusal to rezone the subject property: the lack of street frontage and the concerns expressed by citizens who lived near the proposed mobile home park district.

Regarding the frontage requirement, the city's zoning ordinance requires that a *mobile home park district* have one hundred feet of frontage on a public street. If the appellee's five acres were rezoned to the MHP classification, the result would be a 7.19 acre mobile home park district since what M & N seeks to do here is simply extend its existing mobile home park to include the contiguous, otherwise land-locked parcel owned by it. According to Patsie Christie, the city's Deputy Recorder, who also has a background of education and experience in public administration and city planning, there is a one hundred and fifty foot access along the street into the currently existing park. Therefore, the requirement would be met as it pertains to the overall mobile home park district. As the majority states, zoning is by *district.*

The problem with the majority's argument on the frontage requirement can be seen by the following example. Suppose M & N wished to use the property as single-family or multi-family residential. The city's zoning ordinance requires two hundred feet of frontage for single-family and one hundred feet of frontage for multi-family districts respectively. The parcel of land which is the subject of this case can meet neither of those requirements because it has no street frontage except through the existing mobile home park. For what residential purpose can M & N use its property? It should be remembered that the city's own zoning plan created this land-locked parcel. The only way the parcel can comply with the zoning ordinance is to combine it with the existing mobile home park district.

There are a number of facts which do not appear in the majority opinion. I will set them out here because I believe they constitute overwhelming evidence in support of the chancellor's finding. The five or so acres which are the subject of this case sit landlocked in an area just off McClure Avenue in Lowell. The property is contiguous to the appellee's remaining acreage which is in use as a mobile home park and is properly zoned as MHP. The existing mobile home park fronts McClure Avenue and juts, penninsula-like, into the five acre tract. The 7.19 acres as a whole is surrounded by a variety of uses. To the southwest are duplexes. To the west and northwest are homes on lots with large open areas. To the north is a residential housing addition containing two lots with mobile homes. To the east is an open

area and a stand of trees used as part of a pine tree nursery. To the southeast are single family dwellings. Directly across the street is a parcel of land which is not suitable for development. Across the street and further east is a church.

When the appellee petitioned the Planning Commission to rezone the remainder of his parcel to MHP, the matter was taken up at the Commission's February 7, 1994, meeting. The minutes of the meeting reflect that eighteen citizens spoke in opposition to the rezoning. Their objections ranged from simply not wanting mobile homes or considering them an "eyesore" to fear of decrease in property values, increase in noise, traffic and crime, and the concern that there would be too many mobile homes placed on the 7.19 acres. After the citizens' objections were heard, one commissioner commented that he had once lived next to a mobile home park and it was the primary reason he had moved. Another commissioner said he had once lived next to a mobile home park and the only disturbances he experienced were from the park. Without further reason or comment, the appellee's petition was denied.

The appellee fared no better at the City Council, to which he appealed the Commission's decision. His petition was denied without reason or comment.

The appellee then filed suit in chancery court alleging that the city's denial was arbitrary, capricious and unreasonable. At trial, strong evidence was presented that the city had no reasonable basis whatsoever for its action. In fact, the evidence was striking. The appellee put three city officials on the stand. Not one city official could testify as to why the appellee's application had been denied. In fact, the city's mayor, Glen Rogers, who presided over the city council meeting on the date that the appellee's application was considered, testified as follows:

Q.: Why was the rezoning request of M and N Mobile Home Park rejected?

A.: Because the council turned it down.

Q.: Why did the council turn it down?

A.: I have no idea.

Q.: Was any reason given?

A.: There's no one give [sic] me any reason.

The mayor further testified that the rezoning request was consistent with the city's land use plan and that the requirements of the zoning ordinance were met. Finally, he testified:

Q.: Other than the fact that the Planning —, City Council just said no, can you think of any reason why the rezoning application of Mr. Nordsell was denied?

A.: I can't think of anything else.

There was also undisputed testimony that the appellee's proposed use of the land was consistent with the city's overall land use plan. The majority's implication otherwise is simply erroneous. The plan divided the city into broad-category zones such as residential, commercial or industrial. Patsie Christie testified that a mobile home park district falls within the residential category and therefore is consistent with the land use plan. The mayor likewise testified that M & N's proposed rezoning was consistent with the land use plan in effect in Lowell since 1971. Finally, there was testimony that the minimum requirements of the zoning ordinance had been met, and that citizen opposition had not been used, in the past, as a basis for the Commission to deny a rezoning application. The city offered no testimonial evidence at the hearing before the chancellor.

In the face of the evidence before him, the chancellor looked in vain for a rational basis for the city's action. He found none and, in light of the city officials' testimony and the personal comments made by the Commissioners, concluded that the city's action was arbitrary.

It is difficult to envision a stronger case for a finding of arbitrariness than this one. We have defined the term "arbitrary" as decisive but unreasoned action, *City of Little Rock* v. *Pfeifer*, 318 Ark. 679, 887 S.W.2d 296 (1994), and as an act arising from unrestrained exercise of will, caprice or personal preference, based on random or convenient choice rather than on reason or nature. *Smith* v. *City of Little Rock*, 279 Ark. 4, 648 S.W.2d 454 (1983). The absence of reason is common to both definitions. True, the city is not required by law to set forth the reasons for its actions. But the presumption of reasonableness does not extend to infinity. Here we have not only a lack of any

stated reason, but affirmative statements by city officials that they knew of no basis for the city's action.

By focusing on the comments made by the citizens at the Planning Commission meeting, I fear we have given credence to the idea that neighborhood objections, no matter how lacking in factual support, may serve as a basis for a city's zoning decisions. I disagree with the characterization of the citizens' and Commissioners' comments as "evidence." As the majority correctly points out, neighborhood objections, standing alone, should not be considered as a basis for a zoning decision. However, that is exactly what is happening here. In truth, there is no objective reason for the city's action, as shown by the testimony of the city officials at the trial. One Arkansas commentator has characterized the use of neighborhood protest (or lack thereof) to provide a basis for a city's action as "an aberrant and unwholesome rationale" and "a distortion of the modern philosophy of zoning." M. Gitelman *The Role of the Neighbors in Zoning Cases*, 28 Ark. L. Rev. 221 (1974). In the majority opinion, we have sanctioned the use of unproven fears, stereotypes and prejudices as providing a rational basis for zoning decisions. If a city is permitted to bootstrap neighborhood objections into a rational basis for the denial of a mobile home park, it can happen just as easily with apartments, duplexes, and low-cost housing. The same citizen objections voiced here, such as increased traffic, noise, and increased need for additional police could be argued equally in the case of those uses. This is a door we should not open.

This brings me to the final point in this dissent. The majority implies that we should give no deference to the chancellor's finding in this case. I strongly disagree. The chancellor was presented with testimonial and documentary evidence. From that evidence, he found that the city's action was arbitrary. He applied the proper burden of proof and standard of review. We should uphold his finding unless it is clearly against the preponderance of the evidence. In *City of Little Rock* v. *Breeding*, 273 Ark. 437, 619 S.W.2d 664 (1981) and *City of Little Rock* v. *Parker*, 241 Ark. 381, 407 S.W.2d 921 (1966) we recognized that the sole question before this court in a rezoning case is whether the preponderance of the evidence before the chancellor showed that the city acted arbitrarily. Applying that standard, I believe the chancellor's finding was well supported by a prepon-

350

derance of the evidence.

GLAZE and CORBIN, JJ., join in this dissent.