The Honorable Jay Bradford State Representative Post Office Box 8367 Pine Bluff, Arkansas 71611-8367
Dear Representative Bradford:
I am writing in response to your request for an opinion on whether there is "anything in the attached hunting ordinance (Sec. 14-27 of the Code of Ordinances of the City of Pine Bluff) that would prohibit the city or the Arkansas Game and Fish Commission from enforcing it."
RESPONSE
Your question must be answered with reference not only to Section 14-27 of the City Code (prohibiting hunting within the corporate limits of the City), but also with reference to Section 14-26 thereof (prohibiting the discharge of certain weapons within the City). Although long-standing policy prohibits this office from construing or interpreting the provisions of local ordinances, I and my predecessors have reviewed such ordinances to determine their consistency with state law. Within this limited framework, it is my opinion that it is within the power of a municipality to prohibit the unsafe discharge of weapons or firearms within its jurisdiction. In my opinion, however, this type of legitimate municipal regulation may not be adopted or expressed as a prohibition against "hunting." The exclusive power to regulate hunting has been granted to the Arkansas Game and Fish Commission.
The pertinent portions of the Code of Ordinances provide as follows:
Sec. 14-26
 (a) It shall be unlawful to discharge any firearm or airgun, B-B gun, or any toy gun, projecting lead or any missiles within the city. As used in this section, "firearm" means any device designed, made, or adopted to expel a projectile by the action of an explosive, or any device readily convertible to that use, including such a device that is not loaded or lacks a clip or other component to render it immediately operable, and components that can readily be assembled into such a device.
 (b) This section shall not be construed to prohibit any officer of the law from discharging a firearm in the performance of his duty, or any citizen from discharging a firearm when lawfully defending himself or another.
 (c) Air rifle gun clubs will be allowed to organize in the city, providing they are under adult supervision. The only type of air rifle allowed will be a low power, spring-type air rifle in which the spring is compressed to the same degree each time the gun is cocked and the same amount of air power is available for each shot. Such organized gun clubs may have target practice within the city, providing the target range is in [sic] location with appropriate backstops and is approved by the chief of police. No firing will be done except at such ranges and except with the type gun herein described. An adult supervisor must be present at all times where any firing or target practice is done.
 (d) Any person convicted of discharging a firearm in violation of subsection (a) hereof [14-26(a)] shall be fined not less than three hundred dollars ($300.00) nor more than five hundred dollars ($500.00) for each violation, and the firearm involved in the commission of offense shall be seized and forfeited by court as contraband.
Sec. 14-27
 (a) It shall be unlawful to hunt within the corporate limits of the city.
 (b) The firearm, archery equipment, or other hunting equipment, apparatus, implement or aid, as well as any animal or game killed or secured, in possession of the hunter when cited or arrested for a violation of subsection (a), shall be seized by the law enforcement officer for use as evidence.
 (c) A violation of this section shall be deemed a misdemeanor, and upon conviction thereof, punishable by a fine of not less than three hundred dollars ($300.00) or more than five hundred dollars ($500.00), and any firearm, hunting equipment, implement, apparatus (such as archery equipment), or animal or game seized by the law enforcement officer pursuant to subsection (b) shall be forfeited by the court as contraband.
It has long been the policy of the Attorney General's office to decline to construe the provisions of local ordinances. See Ops. Att'y Gen. No.2004-173; 2003-260; 2003-063; 2002-306; 2002-290; 2001-374; 2001-283; 2001-258; 99-287; 99-146; 99-088; 99-068; 97-080; and 97-038. The construction of such ordinances involves the determination of the intent of the city council, a factor the Attorney General is not well situated to address. See Op. Att'y Gen. 2004-173.
My predecessors and I have issued opinions, however, discussing local ordinances to the extent necessary to determine the application of state law (see Op. Att'y Gen. 2003-260), or where the discussion did not raise questions of intent under a local ordinance. See Op. Att'y Gen.2001-158. With this limitation in mind, I can opine as to whether the relevant section of the City Code is consistent with state law.
It is clear in my opinion that a municipality has authority to pass an ordinance prohibiting the unsafe discharge of firearms or other weapons within its corporate limits. This issue is addressed at A.C.A. §14-54-1104 (Supp. 2003), which provides in pertinent part as follows:
 (b)(1)(A) A local unit of government shall not enact any ordinance or regulation pertaining to, or regulate in any other manner, the ownership, transfer, transportation, carrying, or possession of firearms, or components of firearms, except as otherwise provided in state or federal law.
 (B) This shall not prevent the enactment of an ordinance regulating or forbidding the unsafe discharge of a firearm.
(Emphasis added). See also, A.C.A. § 14-16-105.
Although municipalities may not, under the language above, pass ordinances prohibiting or regulating the possession of firearms, it seems clear under this statute that they may prohibit or regulate the unsafedischarge of firearms. To the extent that Section 14.26 of the Code of Ordinances prohibits the unsafe discharge of firearms or other weapons, it is my opinion that such ordinance is consistent with state law.[1]
Although weapons other than firearms are not addressed in A.C.A. §14-54-1104 above, in my opinion cities have general authority to regulate the unsafe discharge of other types of weapons as well. Municipalities have the power, in accordance with A.C.A. § 14-55-102 (Repl. 1998), to "publish by-laws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof." (Emphasis added.) Cities have broad discretion under this so-called "general welfare clause" to determine what is necessary for the public welfare, safety and convenience of the city's inhabitants. City of Fort Smith v. Van Zandt, 197 Ark. 91, 122 S.W.2d 187
(1938); and Sander v. Blytheville, 164 Ark. 434, 262 S.W. 23 (1924).
Obviously an ordinance prohibiting the discharge of firearms or other weapons inside the corporate boundaries will also have the effect of restricting most types of hunting. Although in my opinion cities have authority to prohibit the unsafe discharge of weapons within corporate borders, they do not have authority to regulate hunting per se. This issue was addressed in an opinion by one of my predecessors. See Op. Att'y Gen. 97-093. The ordinance at issue in that opinion also involved a city prohibition against the discharge of firearms or the use of hunting devices. My predecessor stated:
 The ordinance in question states in its preamble that: "Whereas: The City Council of Diamond City, has determined that there is a need to protect the natural wildlife within our City and surrounding area, and provide penalties for violation thereof." Section 1 states that the ordinance's purpose is to "protect the wildlife within Diamond City. . . ." The ordinance goes on, in the textual sections, to prohibit the use of hunting devices or the taking of wildlife with any trapping device within the relevant area. Ordinance 11-96, Section 1. The ordinance also prohibits the discharge of "any item of firearms" within the city limits. Ordinance 11-96, Section 3.
 It is my opinion that while the municipality is not generally empowered to protect "wildlife" (this function in all likelihood belonging exclusively to the Arkansas Game and Fish Commission, see Arkansas Constitution, Amendment 35), [footnote omitted] it does have the authority to protect its inhabitants from the perceived ill effects of the use or employment of hunting devices, including firearms, within the city limits. See generally, A.C.A. § 14-54-103 (general authority to enact ordinances); § 14-55-102 (general authority to enact ordinances); § 14-43-601 (defining municipal affairs); and § 14-16-504
and 14-54-1411 (Supp. 1995) (prohibiting cities from regulating the possession of firearms, but authorizing cities to regulate the "unsafe" discharge of a firearm). [Footnote omitted.] To be a valid enactment, the ordinance must come within the scope of powers granted cities and towns under the statutes promulgated in the proper exercise of police powers and must bear some reasonable relation to the public health, safety, morals, welfare, comfort, or convenience. Wilkins v. City of Harrison, 218 Ark. 316, 236 S.W.2d 82 (1951). While the preamble and purpose provisions of the ordinance refer to the protection of wildlife, which may, in my opinion, be outside the authority of the City, the actual substantive provisions of the ordinance prohibit the use of hunting devices and the discharge of firearms, which can be said to promote the public safety of residents.
Id. at 5-6. (Emphasis added.)
I agree with this conclusion. A city may not, in my opinion, regulate hunting. It may, however, prohibit the unsafe discharge of dangerous firearms or other weapons within its borders in order to protect its residents, which may have an incidental, prohibitive effect on hunting inside the city's limits.
Amendment 35 to the Arkansas Constitution gives the Arkansas Game and Fish Commission "the exclusive power and authority to issue licenses and permits, to regulate bag limits and the manner of taking game and fish and furbearing animals, and shall have the authority to divide the State into zones, and regulate seasons and manner of taking game, and fish and furbearing animals therein, and fix penalties for violations." Arkansas Constitution, Amendment 35, § 8. The Arkansas Supreme Court has concluded that: "[t]he Amendment clearly divests the Legislature of all of its powers to conserve the wild life resources of this state, except those powers expressly reserved therein, being the power to make appropriations and to increase the annual resident hunting and fishing licenses." Farrisv. Arkansas State Game Fish Commission, 228 Ark. 776, 780,310 S.W.2d 231 (1958). See also Fowler v. State, 283 Ark. 325, 326,676 S.W.2d 725 (1984).
It follows that if the legislature has been divested of its authority over such matters by virtue of Amendment 35, municipalities likewise cannot be invested or exercise power over such matters. Municipal corporations are creatures of the legislature and derive their legislative powers from the general laws of the state. Ark. Const. art.12, § 4. A municipality has no powers except those expressly conferred by the legislature and those necessarily or fairly implied as incident to or essential for the attainment of the purpose expressly declared. City ofLowell v. M N Mobile Home Park, Inc., 323 Ark. 332, 336,916 S.W.2d 95, 97 (1996). Although cities of the first class have broad authority over "municipal affairs," which the Code defines as "all matters and affairs of government germane to, affecting, or concerning the municipality or its government" (see A.C.A. § 14-43-601 (Repl. 1998), this same section enumerates a number of areas that are deemed "state affairs," including "[m]atters coming within the police power of the state. . . ." A.C.A. § 14-43-601(a)(1)(J).
Your question is whether there is "anything in the attached hunting ordinance (Sec. 14-27. . . .) that would prohibit the city or the Arkansas Game and Fish Commission from enforcing it." In my opinion, as stated above, a city may not regulate or prohibit hunting. This is a matter coming within the police power of the state, under the province of the Game and Fish Commission. If a city wishes to proscribe the use of firearms or other hunting devices within corporate boundaries, in my opinion the prohibition must be drafted so as to focus on that proscription. Section 14-27 is not drafted precisely in this regard. It flatly prohibits the action of hunting, which is an activity outside the municipality's authority to regulate. Section 14-26, on the other hand,is aimed at the discharge of "firearms" and certain other types of "guns" within the city limits. It may not be drafted broadly enough, however, to encompass every type of weapon within the legislative aim of the city council (e.g., archery equipment).
In my opinion, therefore, Section 14-27 is problematic in that it attempts to prohibit the activity of hunting, which falls within the exclusive jurisdiction of the Game and Fish Commission.[2]
Although in my opinion Section 14-27 of the Code is generally outside the City's authority, a separate provision within Section 14-27 also gives rise to concerns under state law. Subsection (c) of Section 14-27 makes a violation of the "no hunting" prohibition a misdemeanor and states that "any firearm, hunting equipment, implement, apparatus (such as archery equipment), or animal or game seized by the law enforcement officer pursuant to subsection (b) shall be forfeited by the court as contraband." This provision may be problematic in light of A.C.A. § 5-5-101, which provides in pertinent part as follows:
 (a) All seized property shall be returned to the rightful owner or possessor thereof except contraband owned by a defendant.
(b) Contraband includes:
(1) Any article possessed under circumstances prohibited by law;
 (2) Any weapon or other instrumentality used in the commission or attempted commission of a felony; and
(3) Any other article designated contraband by law.
* * *
 (d) Contraband shall be destroyed, except that any article of contraband capable of lawful use may in the discretion of the court having jurisdiction, be retained for use by the law enforcement agency responsible for the arrest or sold, and the proceeds disposed of, in the manner provided by subsections (e)-(g) of this section.
This state law provides for the return of property to the rightful owner unless it is "contraband." The statute above defines contraband as including weapons "used in the commission or attempted commission of a felony." The offense created by the ordinance is a misdemeanor. State law therefore does not provide for the forfeiture of weapons used in violation of this municipal misdemeanor ordinance as contraband.[3]
Neither in my opinion does such a weapon fit within either of the other two descriptions of contraband in A.C.A. § 5-5-101. Subsection (a) above declares as contraband, "any article possessed under circumstances prohibited by law." Again, municipalities do not have the authority to regulate the possession of firearms. If the City Code does not regulate or prohibit the "possession" of firearms or weapons, such articles are not "possessed under circumstances prohibited by law" under the ordinance for purposes of its being "contraband" under A.C.A. § 5-5-101. Subsection (c) of the statute above defines as contraband any other article designated by law. I have found no statute of general applicability that would declare a weapon or firearm used in the commission of a city misdemeanor contraband.
In my opinion therefore, Section 14-27 of the Code of Ordinances of the City of Pine Bluff (prohibiting hunting), is problematic and in some respects contrary to state law. The City may well be able to accomplish its regulatory aims by revising the particular Ordinance to conform to state law. Such revision is a matter for local officials in consultation with the city attorney or other local counsel.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Although, again, I am not in a position to interpret city ordinances, questions may arise as to whether some of the language of section 14-26 regulates the discharge, as opposed to the possession, of weapons or firearms. For example, section 14-26(a) defines a "firearm" as including a device that is "not loaded or lacks a clip or other component to render it immediately operable. . . ." It is unclear why this definition is necessary in an ordinance prohibiting the discharge, rather than the possession of a firearm. In addition, section 14-26 (c) is unclear in this regard in stating that "[a]ir rifle gun clubs will be allowed to organize . . ." and referring to the "only kind of air rifle allowed. . . ."
[2] State Game and Fish Commission regulations do not flatly prohibit hunting within municipal boundaries. The regulations do prohibit hunting within certain specified distances from residences. AGFC Code, § 18.26. The regulations also allow a city to request the establishment of an urban bow hunting deer zone within city limits. Id. at §§ 5.08 and 6.08.
[3] A similar conclusion applies to Section 14-26 (d) of the City Code.